UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HARRY GRADELESS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CASE NO. 1:10-cv-00086-TWP-DML |
| AMERICAN MUTUAL SHARE INSURANCE CORPORATION et al., | ) |
| Defendants. | ) |

# Order on Plaintiffs' Motion to Compel Discovery and Setting Briefing Schedule on Defendants' Motion to Dismiss Amended Complaint

This matter came before the court on the plaintiffs' Motion to Compel Discovery with Respect to Interested Party Indiana Department of Financial Institutions (Dkt. 80). To give context to this discovery matter, the court describes in some detail the claims in this case and the procedural background of the discovery dispute between the plaintiffs and non-party Indiana Department of Financial Institutions.

**Plaintiffs' Amended Complaint**

The plaintiffs are former members of Jet Credit Union ("Jet"), an Indiana credit union, and some of them formerly were officers or members of Jet's board of directors. Effective March 1, 2004, Jet was merged into defendant Credit Union 1("CU1"), a credit union organized under Illinois law. Defendant American Mutual Share Insurance Corporation ("ASI") had insured the deposits of Jet before its merger into CU1.

This action challenges Jet's merger with CU1. The plaintiffs allege that the merger was an unlawful "hostile takeover" of Jet, was accomplished by fraud and unlawful economic coercion, and did not comply with statutory requirements. They have brought claims for fraud

and civil conspiracy against ASI and CU1, and for negligence against CU1, and they seek rescission of the 2004 merger and damages.

The plaintiffs' case for fraud and economic coercion focuses on events in 2003 when both ASI (the insurer of Jet's deposits) and the Indiana Department of Financial Institutions ("DFI") (an agency that regulates Indiana credit unions, and regulated Jet before its merger) became concerned with Jet's business operations and lending practices and its continued "vitality." (*See* Amended Complaint, Dkt. 20 ¶¶ 66-69). In August 2003, Jet, ASI, and DFI entered into a Letter of Understanding and Agreement to govern certain of Jet's operations and lending practices. The plaintiffs contend that despite Jet's compliance with the Letter of Understanding, representatives of ASI and DFI told Jet's board in December 2003 that Jet was insolvent, or in danger of insolvency, and must immediately dissolve or merge with an existing credit union affiliated with ASI. The plaintiffs assert that Jet was not insolvent, or in danger of insolvency, and that ASI and DFI had manipulated certain financial information to create a picture of insolvency. The Amended Complaint further alleges that Jet's board felt forced to acquiesce in ASI's and DFI's demand that Jet either dissolve or merge so that the board could prevent a "run on the bank" and protect the interests of Jet's members, even though Jet was not insolvent and could have continued in business. According to the plaintiffs, the board's agreement to a management contract with CU1 and then the merger with CU1 was tainted by coercion and economic duress. (Dkt. 20 ¶¶ 71-78). The plaintiffs also contend that the merger failed to satisfy statutory requirements because it was not submitted to a vote of Jet's members and shareholders. (*Id.* ¶¶ 80-81).[1]

---

[1] In addition to challenging the merger, the plaintiffs' Amended Complaint asserts a fraud claim against CU1 arising out of a fidelity bond insurance claim made by CU1 to its bond insurer based on the actions or inactions of John Loudermilk, who had served as the CEO of Jet, and

**Procedural History**

Defendants CU1 and ASI have moved to dismiss the plaintiffs' Amended Complaint on jurisdictional standing grounds and for failure to state a claim upon which relief can be granted. (*See* Dkt. 52). The defendants' dismissal papers rely in part on actions and communications by representatives of DFI in its role as regulator of Jet, reflected in documents prepared by DFI and in documents prepared by Jet. The defendants argue that the plaintiffs cannot connect the defendants to the fraud they allege (false statements made to Jet's board, including statements regarding Jet's insolvency that forced the merger), making the plaintiffs' claimed injury not fairly traceable to the defendants. This is so, according to the defendants, because it was DFI (not the defendants) that actually made the statements at issue, and it was the Jet board (and not the defendants) that made the decision to merge into CU1 based on DFI's statements.

The plaintiffs have sought and received several extensions of time to respond to the defendants' dismissal motion. They first sought (and were granted) a 21-day extension to September 7, 2010, because of their counsel's scheduling conflicts (Dkt. 56). Their response deadline was then extended to November 15, 2010, to allow time for the plaintiffs to conduct discovery before responding. (*See* Dkt. 62, 63). That discovery included the plaintiffs' attempt to take the deposition of a representative of DFI (Mr. Mark Powell), which they contend is necessary to allow them to respond to the defendants' motion to dismiss. (*See, e.g.* Dkt. 69 ¶ 1). The November 15, 2010 deadline was later vacated, with a response deadline to be set as part of the court's ruling on the current motion to compel. (*See* Dkt. 72).

In October 2010, the plaintiffs served a deposition subpoena for Mr. Powell's deposition, which the DFI moved this court to quash on the grounds, generally, that the plaintiffs likely

---

Beverly Jinkins, who was to succeed Mr. Loudermilk as CEO. (*See* Dkt. 20 ¶¶123-126, 153-160).

would seek testimony from Mr. Powell that is privileged from disclosure by a governmental deliberative process privilege or bank examination privilege. The plaintiffs' counsel had taken Mr. Powell's deposition in a state court proceeding pending before Marion Superior Court Judge S.K. Reid, who (over objection by DFI) had ordered Mr. Powell to appear for deposition on October 28, 2010, and produce documents at his deposition. Judge Reid also ruled, however, that documents provided by DFI pursuant to the subpoena were confidential and their disclosure, except under seal, was prohibited.

In opposing DFI's motion to quash in this court, the plaintiffs stated that they had questions to ask Mr. Powell related to this litigation that they had not asked during the state court deposition. This magistrate judge denied DFI's motion to quash the deposition subpoena to Mr. Powell because the court could not determine whether the privileges raised by DFI would be implicated without a record of the questions, objections, and answers actually forthcoming at the deposition, including questions that Mr. Powell had already answered in the state court litigation. The court's denial of DFI's motion to quash was limited to requiring Mr. Powell to appear for his deposition, but did not address (without a developed record) the propriety of any questions to Mr. Powell or any objections by DFI. (Dkt. 71). Based on input from the parties, the court then established a protocol for the plaintiffs' and DFI's creation of a record of the questions to which the plaintiffs are seeking answers from Mr. Powell in this litigation, and ordered the plaintiffs to provide to DFI their written questions and for DFI to then provide to the plaintiffs DFI's specific objections to the questions. (Dkt. 72).

Despite the plaintiffs' assertion that they wanted to ask Mr. Powell questions beyond those they had asked him in the state court deposition, they ultimately did not identify any under the protocol established in this case. That protocol required the plaintiffs to submit to DFI all questions they have for Mr. Powell, and the plaintiffs limited those questions to ones they had

4

already asked Mr. Powell in the October 28, 2010 state court deposition. (Dkt. 82-1). The plaintiffs have designated 545 questions for Mr. Powell, by citation to the state court deposition transcript. (*Id.*).

Thus, although the plaintiffs seek in their motion to compel permission "to continue the deposition" of Mr. Powell and an order requiring "Mr. Powell to respond fully to the questions of the Plaintiffs with respect to the operations of the former Jet Credit Union" (Dkt. 85-1 at p. 11), that relief is unnecessary and unwarranted. Because the plaintiffs have designated questions limited to ones they have already asked and that were already answered, the only issue before the court is whether, under the circumstances, the plaintiffs will be permitted to rely on those questions and answers to oppose the defendants' efforts to dismiss the plaintiffs' claims without a trial.[2] The court is therefore still required to consider DFI's objections.

Because of the large number of questions, DFI has not provided objections on a question by question basis; rather, it has set forth categories of questions for which it has no objections and those for which it asserts objections. DFI objects to questions regarding:

   a. DFI's actions in regulating Jet;
   b. DFI's actions in regulating any other depository institution;
   c. Jet's financial condition at various times;
   d. Jet's asset quality, capital level, liquidity, management, and general operations and condition;
   e. DFI's communications with others with respect to regulation of Jet;

---

[2] Before Mr. Powell's state court deposition, the plaintiffs asked the defendants to agree that Mr. Powell's state court testimony could be used in this litigation. According to the plaintiffs, the defendants did not agree and did not attend Mr. Powell's state court deposition. The defendants' absence from the deposition does not preclude the use of Mr. Powell's sworn testimony for opposing the defendants' motion to dismiss or even one for summary judgment. Mr. Powell's sworn testimony may be considered by the court in the same way and to the same extent that affidavits submitted by the defendants in support of their motion to dismiss may be considered by the court.

f. Any "information concerning the affairs" of Jet not otherwise public, as provided in Ind. Code § 28-1-2-30.[3]

**DFI's Objections**

DFI's objections are grounded in statutory and common law deliberative process and bank examination privileges. The plaintiffs contend that the court may side-step an analysis of these privileges and rely on the Marion Superior Court's order in the state court litigation to overrule DFI's objections in this case.

Though the plaintiffs acknowledge that the state court's order is not binding on this court, (*see* Dkt. 85-1 at p. 4), they ask the court to give the order an unspecified level of deference. The court does not have the briefing that was before the state court and cannot determine from the order what arguments the Marion Superior Court considered or how it analyzed them under the facts of that case. More important, this court has an obligation to make its own analysis and decision, assisted by the arguments presented by the plaintiffs and DFI in the factual and procedural context of this case. In a related argument, the plaintiffs contend that because DFI provided deposition testimony via Mr. Powell in the state court proceeding, DFI has waived any right to object to a deposition of Mr. Powell in this case. The court disagrees. DFI was required, on penalty of contempt of the state court's order, to produce Mr. Powell for deposition in the state court proceeding (and produce documents in connection with that deposition). Further, at the beginning of Mr. Powell's state court deposition, DFI made a standing objection to Mr. Powell answering any questions based on statutory and common law deliberative process and bank examination privileges.

---

[3] DFI does not object to questions regarding Mr. Powell's background with DFI, or general questions regarding deposit insurance, credit union regulation, DFI's regulatory practices, and laws applicable to credit unions.

**Deliberative Process Privilege**

*Medical Licensing Board v. Provisor,* 669 N.E.2d 406 (Ind. 1996), relied on by DFI, discusses the common law deliberative process privilege. The Indiana Supreme Court reversed a trial court's decision requiring the state medical licensing board to answer requests for admissions and interrogatories, and produce documents, about the mental processes of the board in making its decision to revoke Dr. Provisor's medical license. *See id.* at 409. Dr. Provisor sought this information in the litigation by which she sought judicial review of the medical board's revocation decision. The Indiana Supreme Court ruled that the discovery requests could not be squared with the "general bar against probing the mental processes of administrative decision-makers in their private deliberations." *Id.* at 410. The court ruled further that the discovery was inconsistent with the nature of judicial review of an administrative decision. The trial court was not permitted to conduct a *de novo* review of the board's revocation decision and its review was limited to the administrative record. *Id.*

The plaintiffs contend that the general principles discussed in *Medical Licensing Board* do not apply because this litigation is not a direct challenge to any decision made by DFI, DFI is not a party, and DFI does not have any exposure to potential legal claims with respect to Jet because any such claims lapsed long ago. (Dkt. 81 at p. 10).

Although *Medical Licensing Board* was not decided in a context similar to this litigation, the court rejects the plaintiffs' suggestion that the common law deliberative process privilege applies to shield discovery only in cases brought against a state agency challenging the agency's decision. As discussed in *Government Suppliers Consolidating Services, Inc. v. Bayh,* 133 F.R.D. 531 (S.D. Ind. 1990), the privilege has a broader reach. In broad stroke, the common law deliberative process privilege protects from disclosure documents and testimony reflecting the "thoughts, ideas, opinions, and analyses that encompass the process" by which particular

7

executive branch decisions were reached. *Id.* at 534.[4] The privilege is not absolute; it does not prevent the discovery of "pure facts" that originated outside the deliberative process (as opposed to evidence that reveals "mixed facts and deliberations"). It also does not prevent the discovery of "post-decisional" communications "designed to explain the decision" at least where the communication refers to a past decision that has become complete and was designed to explain the decision to the public. And, finally, the privilege can be overcome where the party seeking the information can demonstrate a substantial need for it. *Id.* at 534, 536. To evaluate whether a party has a substantial need for testimony or documents otherwise protected by the deliberative process privilege, the court considers the relevancy of the information to the litigation, the availability of alternative evidence, the seriousness of the litigation, the role of the government in the case, and the possibility of a chilling effect on the deliberative process by permitting the discovery. *Id.* at 533 n.4 and 536.

Given the unusual setting of this case, the court finds that the plaintiffs have overcome the deliberative process privilege and may use Mr. Powell's deposition testimony in their opposition to ASI's and CU1's efforts to dismiss the plaintiffs' claims. The court has read Mr. Powell's state court deposition testimony and, in large part, the testimony is about facts, rather than thoughts and analyses, and in many cases where the plaintiffs tried to delve into DFI's thought processes, Mr. Powell could not recall what they were because the decisions about which the plaintiffs were inquiring were made so long ago. For those portions of Mr. Powell's testimony that raise serious concerns regarding the deliberative process privilege (*e.g.,* questions

---

[4] The court notes that document production from DFI is *not* an issue before the court. In the context of its argument that the deliberative process privilege is broader than the agency judicial review context of *Medical Review Board,* DFI points out that the Indiana Public Records Act, Ind. Code § 5-14-3-4(b)(6), codifies the deliberative process privilege for documents. (Dkt. 84-1 at p. 4). Because documents are not at issue on the plaintiffs' motion to compel, the court does not and need not address the Indiana Public Records Act.

8

about the process behind the Letter of Understanding with Jet, questions about factors discussed in certain bank examinations by DFI of Jet, factors that led DFI to remain concerned about Jet's solvency and reasons for discussing (or demanding) a merger, including opinions regarding certain commercial loans), the court finds that the plaintiffs have sufficiently demonstrated a "substantial need" for the testimony based on the five factors identified in *Government Suppliers,* 133 F.R.D. at 533 n.4.

The relevance factor of the "substantial need" test weighs heavily in the plaintiffs' favor because the defendants' motion to dismiss the plaintiffs' Amended Complaint relies on documents that purport to reflect DFI's communications regarding its regulation of Jet, and decisions and decision-making by DFI about Jet's financial condition, asset quality, capital level, liquidity, management, and general operations and condition—the very matters that DFI contends are within the deliberative process privilege. The defendants (but not DFI) have injected DFI's regulatory role into this case, and if they are permitted to rely on decisions and the decision-making process by DFI in their efforts to win this case, then the plaintiffs should be able to as well. The danger of unwarranted judicial intrusion into DFI's deliberative process as to Jet is also ameliorated by the fact that the administrative decisions at issue took place about seven years ago and have long ago been "completed," and by the plaintiffs' representations to the court that the plaintiffs do not have, and cannot bring, any viable claims against DFI with respect to DFI's regulation of Jet. (*See* Dkt. 81 at pp. 10, 12).

The possibility of alternative sources for the information that the plaintiffs obtained from Mr. Powell and the threat of chilling the government's deliberative process would have weighed heavily in favor of DFI in the usual case. However, this court is not being asked to rule on whether Mr. Powell's testimony can be had in the first place—that cat is already out of the bag as a result of the state court's ruling. In compliance with that ruling, Mr. Powell has already

9

given all of the testimony that plaintiffs designated as necessary for this case. The effect of this court's ruling on the plaintiffs' motion to compel is simply to allow the plaintiffs to use testimony that already exists.[5]

### **The Bank Examination Privilege**

A bank examination privilege is a creature of Indiana state statute and has been developed in the federal common law. Under Ind. Code § 28-1-2-30 and Ind. Code § 28-11-1-3, DFI is prohibited from disclosing "information" concerning the affairs of financial institutions under its regulatory supervision, including bank examination reports, except to state, federal, and foreign government law enforcement, regulatory, or licensing agencies, and to private insurers of deposit accounts in the financial institution, unless the disclosure is "in compliance with the order of a court." Ind. Code § 28-1-2-30. The statutory scheme does not provide guidance for a court to order disclosure, and neither the plaintiffs nor DFI has directed this court to any case law applying these statutes.[6] A common law bank examination privilege has been developed in the federal courts; this court will look to that law (as the parties have done) in deciding the plaintiffs' motion to compel.

---

[5] The court acknowledges DFI's significant interests (to protect its bank examiners and supervisors, its relationship with the financial institutions it regulates, and its relationship with other state and federal bank regulation authorities) in maintaining an atmosphere of candor in the regulation of financial institutions, which could be stymied if DFI officials were routinely subject to interrogation about their decisions in private-party litigation.

[6] The court notes that Ind. Code § 28-11-1-3 provides that information disclosed by DFI under that statute to state, federal, and foreign government law enforcement, regulatory, or licensing agencies, and private insurers remains privileged and the property of DFI, and is not subject to subpoena or discovery. Ind. Code § 28-11-3-3(b). The import of this statute appears to be ensuring that third-party disclosure (to certain specified third parties) does not destroy an otherwise applicable privilege; it does not abrogate the provision of Ind. Code § 28-1-2-30 allowing DFI to disclose information to others if the disclosure is "in compliance with the order of a court."

In general terms, the bank examination privilege is designed to "promot[e] and protect[] the integrity of candid relations between banks and government regulatory agencies" in order to foster the financial soundness of the country's banks overall. *In re Bank One Securities Litigation,* 209 F.R.D. 418, 426 (N.D. Ill. 2002). It protects from disclosure the "iterative process" of comment and response between government entities like DFI and financial institutions like Jet in the course of the government's regulatory role, as well as the agency's opinions and recommendations arising out of that iterative process. *Id.* The privilege does not protect against the disclosure of purely factual matters. *Id.*

Like the deliberative process privilege, the bank examination privilege is not absolute, and a party may be able to override the privilege by showing good cause for doing so. That demonstration is made by reference to the same five factors courts consider when evaluating the deliberative process privilege. In *Bank One*, the court explained:

> The bank examination privilege . . . is not an absolute privilege but rather a qualified privilege. "[T]he privilege may be overridden where necessary to promote 'the paramount interest of the Government in having justice done between litigants.'" The party seeking to override the asserted privilege and gain access to deliberative materials is required to demonstrate good cause. The court then has the duty of balancing "the 'competing interests' of the party seeking the document and those of the government." Traditionally, courts have considered the following five factors to assess the competing interests of the privilege versus that of disclosure: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable.

*Id.* at 427 (internal citations omitted).

As with the court's decision regarding the deliberative process privilege, the court finds that in the unique setting of this case and for the same reasons the court discussed with respect to the deliberative process privilege, the plaintiffs have "overridden" the bank examination privilege with respect to the deposition testimony by Mr. Powell that was taken in the state court

litigation. Accordingly, the court permits the plaintiffs to use Mr. Powell's testimony in their opposition to the defendants' efforts to dismiss the plaintiffs' amended complaint.

### Conclusion

Plaintiffs' motion to compel (Dkt. 80) is GRANTED on the terms set forth in this order. In opposing the defendants' efforts to dismiss this case without a trial, the plaintiffs may use and rely on the questions they asked and the answers given by Mr. Powell in his deposition taken October 28, 2010, in the state court litigation. The plaintiffs are not permitted to "continue" the deposition of Mr. Powell and Mr. Powell is not required to provide additional or supplemental answers to the plaintiffs. Mr. Powell's deposition testimony shall remain under seal.

### Briefing Schedule

The plaintiffs shall file their response to the defendants' motion to dismiss their amended complaint on or before 14 days from the court's entry of this order. The 14-day deadline will not be extended except under extraordinary circumstances. The defendants shall file their reply brief no later than 21 days from service of the plaintiffs' response brief.

So ORDERED.

Date: 01/19/2011

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

David W. Alexander
SQUIRE SANDERS & DEMPSEY (US) LLP
dalexander@ssd.com

Monica Renee Brownewell Smith
BARNES & THORNBURG LLP
monica.brownewell@btlaw.com

Andrew T. Glier
INDIANA OFFICE OF THE ATTORNEY GENERAL
andrew.glier@atg.in.gov

Edward L. Harris III
ABBOTT & HARRIS
eharris@ahplegal.com

Christian P. Jones
BARNES & THORNBURG LLP
christian.jones@btlaw.com

Emily E. Root
SQUIRES SANDERS & DEMPSEY, LLP
eroot@ssd.com