UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HARRY GRADELESS, JOHN V. LOUDERMILK, GARY AUSTIN, AMY BAILEY, RAYFORD BROWN, ASHLEY EMERY, BRITTANY EMERY, DEBORAH EMERY, WILLIAM FRITZ, HAE YOUNG SUNG GAO, SHANNON GORDON, JOHN GROOMS, JOYCE HISE, CHRISTOPHER JINKINS, DEBRA LOUDERMILK, JOHN T. LOUDERMILK, TRACY LOUDERMILK, DOROTHEA MARTIN, RONALD MARTIN, JOE NEWMAN, VECHELE RHODES, SR., VECHELE RHODES, JR., VECHELLE RHODES-SANDERS, KATHERINE SMITH, KEVIN SMITH, TERRY SMITH, CHOON SUNG, JONG SUNG, ROY G. STOOPS, TIFFANY WHITE, WILLIAM WILSON, ADVENTURE RV RENTALS, INC. ADVENTURE RV SALES, INC., CONTROLLED TEMPERATURE TRANSIT, INC., GALILEE MISSIONARY BAPTIST CHURCH, LOUDERMILK CLAIMS SERVICE, INC., MAGDIM LE, INC., MESSIAH MISSIONARY BAPTIST CHURCH, INC., ROCK OF FAITH MISSIONARY BAPTIST CHURCH, INC., RVS TO GO HOLDINGS, INC., and STONE & RHODES TRUCKING CO., INC., <br><br>Plaintiffs, <br><br>v. <br><br>AMERICAN MUTUAL SHARE INSURANCE CORPORATION, CREDIT UNION 1, and INDIANA DEPARTMENT OF FINANCIAL INSTITUTIONS, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:10-cv-0086-TWP-DML ) ) ) ) ) ) ) |

## ENTRY ON DEFENDANTS= MOTION TO DISMISS

This case is before the Court on Defendants=, Credit Union 1 (ACU1@) and American

Mutual Share Insurance Corporation=s (AASI@) (collectively, ADefendants@), Motion to Dismiss.

1

Plaintiffs in this action are former members of Jet Credit Union ("Jet"), an Indiana credit union which no longer exists. On March 1, 2004, Jet was merged into CU1, a credit union organized under Illinois law. Almost six years later, Plaintiffs filed their complaint challenging Jet's merger with CU1. Specifically, Plaintiffs allege that this "merger" was tantamount to an unlawful hostile takeover, accomplished by fraud and unlawful economic coercion. Likewise, Plaintiffs maintain that the merger did not comply with Indiana statutory requirements.

Plaintiffs have brought claims for fraud and civil conspiracy against CU1 and ASI (the insurer of Jet's deposits before the merger). Additionally, Plaintiffs have brought a negligence claim against CU1. As a remedy, Plaintiffs seek rescission of the merger and damages. Plaintiffs appear to face a tough road going forward but, for all but one of their claims, they will live to fight another day. Defendants' Motion to Dismiss (Dkt. 52) is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

As an initial matter, even though this case is currently before the Court on a motion to dismiss, extrinsic evidence has been incorporated into the background section. This is appropriate, given that Defendants have raised a factual (or substantive) subject matter jurisdiction challenge. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (citations and internal quotations omitted).

A.  **Factual Backdrop**

In 2003, the Indiana Department of Financial Institutions ("DFI") – an agency that regulates Indiana credit unions, including Jet – conducted a routine examination of Jet's financial condition, pursuant to its regulatory responsibilities. The examination revealed numerous red flags, which DFI highlighted in a written investigation report. Subsequently, Jet submitted a written response, acknowledging DFI's concerns and promising to implement corrective measures.

During the spring and summer of 2003, DFI and ASI conducted further investigations into Jet's operations and financial health. On August 13, 2003, DFI, ASI, and Jet entered into a Letter of Understanding and Agreement ("LUA"), which described Jet's precarious financial state. Significantly, in the LUA, DFI reserved the right to require Jet to merge with another credit union or to liquidate if: (1) DFI determined that Jet was not complying with the LUA, or (2) DFI determined that Jet was not showing sufficient improvement. After the parties entered into the LUA, DFI and ASI continued to monitor Jet's operations and finances and, in doing so, continued to uncover problems. From their vantage point, Jet's chances of survival remained dim.

On December 1, 2003, DFI attended a meeting of Jet's board of directors and informed the board that Jet was in imminent danger of insolvency and needed to merge with another credit union or face involuntary liquidation. DFI informed Jet's board that it had contacted CU1 as a potential merger candidate. Thereafter, Jet's board passed a resolution to proceed with the merger. To effectuate the merger, Jet and CU1 submitted numerous documents to regulatory agencies. This included a Certificate of Merger, which noted that Jet's members *"were not required to vote on the merger pursuant to Ind. Code § 28-7-1-33(d)."* Moreover, in its

3

resolution, Jet's board acknowledged that the merger had been approved without a vote pursuant to Ind. Code ' 28-7-1-33(d). DFI, by letter, also confirmed that no vote was necessary due to Jet's impending insolvency.

On or about March 1, 2004, DFI formally approved the merger. As of the merger date, Jet ceased all operations and ceased to exist. As confirmed by the Agreement of Merger, the deposits of Jet's members were transferred to CU1 on a dollar for dollar basis. According to Jet's Bylaws, when a credit union member withdrew from Jet, that member was only entitled to payment of the amount deposited, less any amounts owed to the credit union.

According to Defendants, since the merger, CU1 has remained in good financial health, allowing it to offer advantageous lending rates and to pay competitive dividends. In the credit union world, dividends are akin to interest payments. Moreover, since the merger, CU1 has operated as a single integrated credit union.

Prior to the merger, on August 5, 2003, Jet submitted a Notice of Loss to its surety Cumis Insurance Society, Inc. (ACumis@) relating to damages sustained as a result of the wrongdoing and self-dealing of John Loudermilk (ALoudermilk@), one of the Plaintiffs in this action, and other Jet officers and directors. After the merger, CU1 continued pursuing the bond claim (ABond Claim@), supplementing the then-pending claim and ultimately requesting a payment of $2,624,425.12. Cumis ultimately settled the Bond Claim for $2,135,027.00. From there, Cumis stepped into CU1's shoes and is now prosecuting claims against Loudermilk.

**B.**     **Plaintiffs= Allegations**

Plaintiffs, naturally, have their own take on the events precipitating the merger. In Plaintiffs= Amended Complaint, they contend that Jet was solvent and could have continued operations and that ASI and DFI manipulated certain financial metrics to paint a picture of

4

insolvency. Plaintiffs also allege that Jet's board felt hamstrung into either dissolving or merging in order to protect its members and prevent a "run on the bank." Thus, the board's agreement to merge with CU1 was indelibly tainted by coercion and economic duress. Plaintiffs also contend that the merger failed to satisfy statutory requirements because it was not submitted to a vote of Jet's members. Finally, Plaintiffs assert a fraud claim against CU1 arising out of the Bond Claim. On this point, Plaintiffs claim that "CU1 presented, or caused to be presented to Cumis, a claim that contained false, incomplete, or misleading information concerning the Bond Claim, including, but not limited to, information related to alleged losses or potential losses of Jet." (Dkt. 92 at 5).

## II. **LEGAL STANDARDS**

Defendants argue that Plaintiffs' claims should be dismissed for two independent reasons. First, Plaintiffs lack constitutional standing required to provide the Court with subject matter jurisdiction. Second, even if Plaintiffs establish standing, they cannot allege facts sufficient to state a claim upon which the Court can grant relief. Given the nature of Defendants' Motion, two legal standards apply.

### A. **12(b)(1) Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss if the court lacks subject matter jurisdiction. Article III of the United States Constitution limits the federal courts' subject matter jurisdiction to "actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation and internal quotations omitted). It is well-settled that "standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital*, 572 F.3d at 443-44 (citation omitted). To demonstrate standing, the plaintiff bears the burden of proving three elements:

5

> First, the plaintiff must have suffered an 'injury in fact'─ an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'
>
> Second, there must be a causal connection between the injury and the conduct complained of ─ the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'
>
> Third, it must be 'likely', as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added; internal citations omitted). If the plaintiff does not have standing, the complaint must be dismissed.

As mentioned above, when reviewing a 12(b)(1) motion, "The Court is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the district court to proceed with the action." *First Nat'l Bank of Chicago v. Steinbrink*, 812 F. Supp. 849, 852 (N.D. Ill. 1993) (quoting *Grafon Corp. v. Hauserman*, 602 F.2d 781, 783 (7th Cir. 1979)). Therefore, a complaint's allegations "must be considered in conjunction with all other evidence submitted on the issue of subject matter jurisdiction." *Id.* (citation omitted). Finally, "any conflict in the evidence submitted must be viewed in light of the fact that the party invoking jurisdiction carries the ultimate burden of presenting competent factual proof of proper subject matter jurisdiction." *Id.* (citation and internal quotations omitted).

**B.      12(b)(6) Failure to State a Claim**

When reviewing a 12(b)(6) motion, the court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the

6

defendant fair notice of what the…claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

According to Defendants, Plaintiffs cannot establish any of the three elements of standing: (1) an injury in fact; (2) an injury fairly traceable to Defendants; and (3) an injury that can be redressed by the courts. Each element is analyzed in turn below.

##### 1. Injury in fact

First, to establish an injury in fact, Plaintiffs must show that they have a "concrete or particularized" injury that is "actual or imminent," not merely "conjectural." *Lujan,* 504 U.S. at 560. Defendants argue that Plaintiffs' Complaint only includes amorphous allegations of unspecified "damages" that are insufficient to show an injury in fact. The Court respectfully disagrees. On this point, an observation from the Seventh Circuit in *Harzewski v. Guidant*, 489 F.3d 799 (7th Cir. 2007) is noteworthy. In *Harzewski*, pension plan members brought a class action against their former employer alleging various breaches of fiduciary duty. Significantly, the Seventh Circuit recognized, "[o]bviously the named plaintiffs have standing to sue in the sense

7

of being entitled to ask for an exercise of judicial power of the United States as that term in Article III of the Constitution has been interpreted, <u>because if they win they will obtain a tangible benefit</u>.@ *Id*. at 803 (emphasis added).[1]

Here, Plaintiffs have alleged that the *net capital* of Jet was taken from Plaintiffs and transferred to CU1 in contravention of Ind. Code ' 28-7-1-27.1(8). This allegation amounts to an injury in fact. Switching gears, Plaintiffs allege that the Bond Claim was fraudulent, thus driving up insurance premiums.[2] In this sense, the Bond Claim presents a risk of future harm that also constitutes an injury in fact. *See Pisciotta*, 499 F.3d at 634 (injury in fact requirement can be satisfied by a threat of future harm or by an act that harms the plaintiff by increasing the risk of future harm that the plaintiff would not otherwise face). This is perhaps a close call, but the Court believes that Plaintiffs have satisfied the injury in fact requirement to establish standing.

### 2. Injury is fairly traceable to Defendants

Second, the injury in fact must be fairly traceable to Defendants. To meet this element, Plaintiffs must prove Aa causal link between the injury and the defendant=s action, such that the

---

[1] At times, Defendants seem to argue that, in effect, Plaintiffs must prove their damages theory in order to establish standing: A*Notably absent from Plaintiffs=proof, though, are any actual financial statements or any expert analysis.*@(Dkt. 97 at 5). The Court believes this is an overly expansive view of what is required of Plaintiffs to establish standing and that tackling such issues would be premature.

[2] Defendants repeatedly rely on *Massey v. Merrill Lynch Co.*, 464 F.3d 642 (7th Cir. 2006), which held that stockholders did not have standing to sue for fraudulent statements made to the company=s board, Aeven if the value of their stock is impaired.@ *Id*. at 645. The Court believes that such reliance is misplaced. *Massey* held that the directors of a corporation did not have standing because their claims were solely derivative in nature, meaning they belonged to the corporation. *Id*. (AThe central issue in this appeal is whether the plaintiffs have standing to bring these claims as a direct action, or…whether their claims are solely derivative in nature…@). Defendants essentially invite the Court to conflate direct/derivative standing with Article III standing. Given that they are distinct concepts, the Court believes this would be a mistake.

8

injury is fairly traceable to the action complained of and not the result of actions by some third party not before the court." *Area Transp. Inc. v. Ettinger*, 219 F.3d 671, 672 (7th Cir. 2000) (citations omitted). Here, DFI – not ASI or CU1 – made the statements that were the impetus for the merger, which was independently and unanimously approved by Jet's board without a vote. ASI and CU1 were conspicuously absent from these proceedings and, logically following, were completely detached from any alleged fraud. Once again, this is a tough call, but the Court is not persuaded. ASI and CUI were in the mix leading up to the merger and Loudermilk was a Jet board member "when certain of the complained of actions on the part of ASI occurred."(Dkt. 92 at 15). More importantly, to some degree, the Court believes that Defendants' "causal link" argument is effectively a well-constructed Trojan Horse inviting the Court to pierce into the merits of Plaintiffs' claims. It would be premature to do so.

    **3.    Injury can be redressed by courts**

Third, Plaintiffs must show that it is "likely," not merely "speculative," that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. 555, 570-71. To bolster their argument for dismissal, Defendants note that the Court could not possibly engineer a reversal of Jet's merger into CU1. Indeed, it is almost unfathomable to think that the Court could unilaterally unravel a six year old transaction, split one functioning integrated entity into two, get a fledgling Jet credit union up and running, and restore the 2004 *status quo*. *See, e.g, Bank of New York Co., Inc. v. Northeast Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("[W]here a merger has been consummated, restoration of the status quo may be impossible.").

Regardless, rescission is not the sole remedy sought by Plaintiffs. They also seek a return of their capital, akin to a damages award. Assessing damages is, of course, well within the province of the Court. Moreover, Plaintiffs intimate that CU1 has operated the

9

"entity-formerly-known-as-Jet" as a separate and segregated entity. For these reasons, the Court finds that Plaintiffs have satisfied the final element to establish standing.

In essence, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital*, 572 F.3d at 443. When the dust settles, the Court may very well reject Plaintiffs' claims on the merits. That said, Plaintiffs are entitled to have the merits of their claims heard. For the above reasons, the Court is not persuaded by Defendants' standing argument.

**B.      12(b)(6) Arguments**

In the alternative, Defendants seek dismissal because Plaintiffs have failed to state claims upon which relief can be granted. In their response, Plaintiffs effectively conceded the day on Count V – the "negligence *per se*" claim. Therefore, Count V is dismissed.

With respect to the remaining counts, Defendants' arguments, although certainly cogent, fail to convince the Court that dismissal is appropriate at this early juncture. As the parties know, the 12(b)(6) standard is "plaintiff friendly." Thus, many cases survive a motion to dismiss only to be disposed of on summary judgment. In short, the Court believes that Plaintiffs have done enough – perhaps the bare minimum – to stave off dismissal.

Moreover, given the procedural context of this case, the Court is reticent to probe the merits too deeply, for fear of inappropriately treating this dispute as a summary judgment motion under the guise of 12(b)(6). Doing so would be unfair, given that the parties have not engaged in full-fledged discovery.[3] After all, when factual issues exist, "the district court should permit the

---

[3] It should be noted that the Court is not deciding whether or to what extent Plaintiffs need additional discovery to respond to a motion for summary judgment, should Defendants file one. The Court notes that the parties disagree as to whether Plaintiffs have essentially obtained everything they need.

parties to engage in discovery before converting (for all intents and purposes) a motion to dismiss into one for summary judgment.@ *See, e.g., Covington v. Illinois Security Service, Inc.*, 269 F.3d 863, 865 (7th Cir. 2001) (AAlthough we have at times allowed the conversion of a motion to dismiss into one for summary judgment to be implicit, reversal of such a ruling may become necessary if the district court has not provided the adversely affected party with notice and an opportunity to respond.@); *Fleischfresser v. Directors of School Dist. 200*, 15 F.3d 680, 685 (7th Cir. 1994) (district court should give notice to parties when converting a 12(b)(6) motion into one for summary judgment); *Edward Gray Corp. v. National Union Fire Ins. Co.*, 94 F.3d 363, 366 (7th Cir.1996) (requirement of reasonable opportunity to respond is mandatory, not discretionary). Thus, Defendants= 12(b)(6) argument also fails.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants= Motion to Dismiss (Dkt. 52) is **GRANTED** in part and **DENIED** in part. Count V of the Amended Complaint is dismissed and the remaining counts shall live to fight another day.

SO ORDERED: 03/23/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David W. Alexander
SQUIRE SANDERS & DEMPSEY (US)
LLPdavid.alexander@ssd.com, maryjo.hoffman@ssd.com

Monica Renee Brownewell Smith
BARNES & THORNBURG LLP
monica.brownewell@btlaw.com, jroehlk@btlaw.com

Andrew T. Glier
INDIANA OFFICE OF THE ATTORNEY GENERAL
andrew.glier@atg.in.gov, lori.smith@atg.in.gov

Edward L. Harris , III
ABBOTT & HARRIS
eharris@ahplegal.com

Christian P. Jones
BARNES & THORNBURG LLP
christian.jones@btlaw.com

Emily E. Root
SQUIRES SANDERS & DEMPSEY (US)
LLPeroot@ssd.com, dclark@ssd.com